# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **EMANUEL FORD**, | **2:17-CV-12933-TGB** |
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |
| **CITY OF DETROIT, CITY OF DETROIT POLICE DEPARTMENT, JOHN SVEC, and JOHN DOE**, | |
| Defendants. | |

Emanuel Ford, a Detroit property owner, brings this lawsuit claiming that he was roughed up by Detroit Police Officers and arrested without any probable cause. The City of Detroit and the accused Officers are asking for summary judgment in their favor, but there are questions of fact that must be determined by a jury. Before the Court are Plaintiff's Motion to Amend the Complaint (ECF No. 34) and Defendants' Motion for Summary Judgment (ECF No. 35).[1]

---

[1] Defendants title their Motion a "Motion to Dismiss" but seek relief under Fed. R. Civ. P. 56. (ECF No. 35, PageID.1000). The Court construes Defendants' Motion as a motion for summary judgment.

## I. Background

On August 18, 2017, Plaintiff Emanuel Ford initiated this action by filing the Complaint. ECF No. 1. The case was removed from state court to the Eastern District of Michigan on September 7, 2017. *Id.* The allegations of the Complaint arise out of Plaintiff's alleged unlawful arrest following a 2016 shooting at Plaintiff's Detroit rental property. *Id.* Plaintiff brought claims against all Defendants for false arrest and excessive force in violation of the Fourth Amendment; against all Defendants for violation of Plaintiff's due process rights under the Fourteenth Amendment; against the City of Detroit for *Monell* violations; against Defendants Svec and John Doe for state law gross negligence and assault and battery; and two causes of action to recover Plaintiff's handguns, concealed carry permit, and cell phone, which were seized at the time of his arrest. *Id.*

Over the course of this litigation, Defendants returned Plaintiff's handguns, concealed carry permit, and cell phone, rendering Plaintiff's causes of action to recover the seized items moot. ECF No. 39, PageID.1088. Also during discovery, Plaintiff identified the names of

some of the other Officers who were involved in his arrest. He therefore asks leave to amend the Complaint to add their names. Plaintiff also concedes that the City of Detroit Police Department is not a separately suable entity, and Plaintiff consents to the dismissal of the City of Detroit Police Department from this action. *Id.* Additionally, Plaintiff consents to dismissal of his state constitutional claims, his gross negligence claim, and his Fourteenth Amendment claims. *Id.* at PageID.1092–93. Plaintiff's Fourth Amendment, *Monell*, and assault and battery claims remain before the Court.

## II.    Facts

On June 21, 2016, Emanuel Ford received somewhat frantic telephone calls from some of his tenants reporting that a dispute between the upstairs and downstairs tenants over placement of a trashcan at his rental property had escalated into a gun fight where shots were fired. Ford Dep., ECF No. 39-2, PageID.1114. Plaintiff and his wife drove to the property, located at 12798 Kentucky Street in Detroit ("rental property"), and arrived shortly after the shooting had ended and before any police officers had arrived. *Id.* at PageID.1115. As Plaintiff parked on Kentucky St., approximately three houses down from his rental

property, a marked police car drove down the street. *Id.* Plaintiff flagged the officer down and informed him that he was the landlord of the property at 12798 Kentucky St., that a shooting had just occurred, that there were spent shell casings in the street, and that he was armed with a handgun for which he had a concealed carry permit. *Id.* at PageID.1116. The officer thanked Plaintiff and repositioned his scout car to block off the street. *Id.*

Another officer arrived from the opposite direction. *Id.* Plaintiff repeated to the second officer what he told the first officer. *Id.* at PageID.1117. The second officer thanked Plaintiff and proceeded to Plaintiff's rental property. *Id.* Plaintiff, standing near his vehicle, observed an individual on a stretcher being transported from the rental property into an ambulance. *Id.* Sensing that there was no longer a need to be armed, Plaintiff removed his weapon from his person, placed it under a seat in his vehicle, and waited for police to provide him with more information about what had happened at his rental property. *Id.*

Approximately forty-five minutes later, Plaintiff was approached at his vehicle by three police officers. *Id.* at PageID.1119. Two officers were in uniform and one, Brian Gibbings, was in plainclothes. *Id.* One of the

uniformed officers, Timothy Sumpter, asked Plaintiff for permission to retrieve Plaintiff's handguns. *Id.* at PageID.1120. Plaintiff allowed Sumpter to retrieve the two handguns he had lodged under a seat in his vehicle and handed Sumpter his driver's license and concealed carry permit. *Id.* Gibbings then informed Plaintiff that the officers wanted Plaintiff "to talk to some detectives at the other end, you know, where the crime scene was" and escorted Plaintiff to a police car parked near his rental property. *Id.* at PageID.1121.

Once the pair arrived at the police car, Plaintiff testified that Gibbings opened the door and told Plaintiff to get in. *Id.* Plaintiff asked why he was being told to get into the police car. *Id.* At that point, according to Plaintiff, Defendant John Svec, a captain in the Detroit Police Department, accused Plaintiff of lying to another officer and "grabbed [Plaintiff] by the back of the hand and slammed [Plaintiff] face forward into the police car." *Id.* Svec then instructed Gibbings to "take care of him." *Id.* Gibbings "started putting his fists, felt like his fists . . . into the middle of [Plaintiff's] back." *Id.* at PageID.1122. As Gibbings forcefully handcuffed Plaintiff, Plaintiff began "screaming, hollering . . . [and] crying." *Id.* at PageID.1121. Plaintiff, "partially laid across the

[back] seat" of the police car, requested medical attention. *Id.* at PageID.1123. Another ambulance responded to the scene, Plaintiff received medical attention, and was transported to Sinai-Grace hospital. *Id.* at PageID.1129. Officers did not accompany Plaintiff to the hospital. Plaintiff has not been charged with an offense in connection with the shooting.

The parties dispute whether Defendant Svec and the other officers had probable cause to arrest Plaintiff on June 21, 2016. Defendant Svec testified that after arriving on the scene, he received a radio call from another officer, Jason Lord, who had responded to Sinai-Grace hospital after an individual injured in the shooting had been transported there. Svec Dep., ECF No. 35-2, PageID.1052. Svec testified that in the radio transmission, Lord stated that he learned from an individual at the hospital that "the landlord was involved in the shooting." *Id.* Based on Lord's radio transmission and Plaintiff's possession of a weapon with a spent shell casing,[2] Svec ordered Plaintiff's arrest because "[i]n my mind we had enough to arrest him. He was being arrested for the shooting." *Id.*

---

[2] At oral argument, Plaintiff disputed for the first time that a shell casing was found in his handgun.

The record includes a number of official police reports that contain time stamps that appear to record the exact time when each entry in the report took place. For example, the police report entered by Sumpter on June 22, 2016 states that he recovered Plaintiff's two firearms at 6:50:50 and 6:50:54 P.M. Ex. J, ECF No. 34-11, PageID.994–95. This style of report is clearly a computerized form and is printed. Neither counsel could explain, at oral argument, how exactly the time-referents in the report were generated. Another kind of report in the record was a hand-written report called an "activity log." That report was kept to record the runs conducted by the scout car, operated by Officers Jason Lord and Margie Everett, which responded to Sinai-Grace on the night of the shooting. According to that report, the pair arrived at Sinai-Grace at "19:03", or 7:03 P.M. Ex. H, ECF No. 39-9, PageID.1174. Lord testified that he made the radio call in question after arriving at the hospital and speaking with an individual involved in the shooting. Lord Dep., ECF No. 39-7, PageID.1164. At his deposition, Lord could not recall who told him that Plaintiff was involved in the shooting. *Id.* at PageID.1168. Everett did not recall anyone telling her that Plaintiff was involved in the shooting. Everett Dep., ECF No. 39-8, PageID.1171.

## III. Defendants' Motion for Summary Judgment

### a. Contentions

Defendants contend that they are entitled to summary judgment on Plaintiff's Fourth Amendment false arrest claim because Svec had probable cause to arrest Plaintiff at the scene on June 21, 2016.  ECF No. 35, PageID.1011.  Defendants argue that Lord's radio transmission that "the landlord was involved in the shooting", coupled with the officers' knowledge that semiautomatic handgun shell casings were found at the scene, that Plaintiff possessed a semiautomatic handgun, and that Plaintiff's handgun contained a spent shell casing, provided sufficient probable cause for Plaintiff's arrest.  *Id.* at PageID.1012.  Defendants further assert that even if Svec was given erroneous information about Plaintiff's involvement in the shooting by Lord, Svec is entitled to qualified immunity for his reasonable reliance on information provided to him by another police officer—even if it later turned out to be erroneous.  *Id.* at PageID.1018.

Plaintiff attacks the sufficiency of probable cause based on the inconsistency in the timeline between Svec's testimony and the recorded time-stamps contained in the computerized reports and the hand-written

time-entries on the activity log of Lord and Everett. According to Svec, he had Plaintiff arrested only after the call came over the radio from officers at the hospital reporting that the landlord may have been involved in the shooting. This call would have occurred, according to the time entries on the police activity log of the officers at the hospital, at some point after 7:03 p.m. But according to the computerized reports, the seizure of Plaintiff's firearms—which supposedly took place at approximately the same time as his arrest—had occurred at 6:50:50 and 6:50:54 P.M. Pointing to this inconsistency, Plaintiff maintains that because the radio transmission from Lord that Svec purportedly relied on either occurred after Plaintiff had already been arrested, or perhaps did not occur at all, there was no probable cause to support his arrest. ECF No. 39, PageID.1104. Plaintiff asserts that without the radio transmission, "[o]ther than having a gun, the officers had no reason to believe Plaintiff had been involved." *Id.*

With respect to Plaintiff's other claims, Svec contends that he did not use excessive force in "slamming" Plaintiff face-forward into the police cruiser, and that he is entitled to state qualified immunity for Plaintiff's assault and battery claims. ECF No. 35, PageID.1020–26.

9

Defendant City of Detroit contends that Plaintiff "has not produced a single shred of evidence in the process of discovery that would sustain a *Monell* claim." *Id.* at PageID.1026.

Plaintiff contends that force applied by Svec was excessive, and that Svec is responsible for the force applied by his inferior officers. ECF No. 39, PageID.1102. With respect to qualified immunity for Plaintiff's assault and battery claims under Michigan's governmental tort immunity statute, Plaintiff contends that Defendants are not entitled to qualified immunity because Svec did not have probable cause to arrest Plaintiff. ECF No. 39, PageID.1103. Plaintiff asserts that because Svec lacked probable cause, the arrest cannot be said to have been undertaken in good faith—a requirement to establish qualified immunity under state law. *Id.* at PageID.1103. Finally, with respect to Plaintiff's *Monell* claim, Plaintiff asserts that the allegations in the Complaint are sufficient, and were the Court to disagree, the additional details included in the proposed amended complaint suffice to establish Plaintiff's *Monell* claim. *Id.* at PageID.1105.

### b. Legal Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001). As the moving party, the Defendants have the initial burden to show that there is an absence of evidence to support Plaintiff's case. *Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the

adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012). Since Defendants' motion rests in part on a claim of qualified immunity, Plaintiff bears the burden of showing that Defendants are not entitled to such immunity under the test established in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) in order to survive a motion for summary judgment. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

The *Harlow* test has two prongs. Under the first, the Court must determine whether the officer's conduct violated a federal right. Under the second, the Court must determine whether that right was "clearly established" at the time, such that a reasonable official would have known of it. 457 U.S. at 818. However, even when a defendant asserts qualified immunity as an affirmative defense in a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255).

### c. Discussion

### i. Fourth Amendment Claims

### 1. Probable Cause

Plaintiff alleges that Defendants did not have probable cause to arrest him on June 21, 2016, and that when they did arrest him, the Defendants did so with excessive force.

A warrantless arrest is unlawful unless it was made upon probable cause. *Dunaway v. New York*, 442 U.S. 200, 208 (1979). "[C]ommon rumor or report, suspicion, or even 'strong reason to suspect'" are insufficient to establish probable cause, though "[e]vidence required to establish guilt is not necessary." *Henry v. United States*, 361 U.S. 98, 101–02 (1959). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent." *Henry*, 361 U.S. at 102.

Defendant Svec asserts that his probable cause determination was based on Plaintiff's possession of a handgun, a spent shell casing found in the chamber of the handgun, and a radio transmission from officer Lord that "the landlord was involved in the shooting." Plaintiff disputes whether the latter two occurred and has identified a number of factual inconsistencies between the police report written by Sumpter, the "run sheet" written by Lord, and the deposition testimony of Svec. For example, Svec testified that he based his decision to arrest Plaintiff in part on a radio transmission from Lord. Sumpter's police report indicates that Plaintiff's weapons were seized at 6:50:50 and 6:50:54 PM, and by all accounts Plaintiff was arrested mere seconds or minutes after the firearms were seized. Lord's run sheet indicates that he did not arrive at the hospital until 7:03 PM. Lord testified that upon arriving, he entered the hospital, spoke to a witness whom he cannot remember, and then radioed that the landlord was involved in the shooting. If Plaintiff was arrested at or near 6:50 PM, a call from Lord occurring at or near 7:03 PM could not have served as a basis for Plaintiff's arrest.

At oral argument, Defendants' counsel asserted that the discrepancies in the police reports and run sheet were immaterial and

urged the Court to look only to the testimony of the Officers. This the Court cannot do. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Based on the time stamps of the police reports and hand-written entries in the run sheet, there exists a question of fact as to whether Plaintiff was arrested before or after Lord's radio transmission. At oral argument, Plaintiff also disputed whether a spent shell casing was actually found in his weapon. As the answers to both of these questions will require the fact finder to weigh the credibility of witnesses giving conflicting testimony, both questions must be submitted to the jury. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) ("In undertaking this [summary judgment] inquiry, credibility judgments and weighing of the evidence are prohibited.") (internal quotations and citations omitted).

Without the purported shell casing in Plaintiff's handgun and the radio transmission from Lord, the Court cannot conclude that Defendants had probable cause to arrest Plaintiff on June 21, 2016. Consequently, a genuine issue of material fact for trial exists as to whether Defendants had probable cause to arrest Plaintiff.

With respect to qualified immunity, Svec contends he is entitled to qualified immunity even if he relied on a radio transmission stating that "the landlord was involved in the shooting" that ultimately turned out to be erroneous. While that may be true, the Court does not reach this question because the genuine issue of fact pertains to whether Svec received the radio transmission before or after Plaintiff's arrest, not whether the call was accurate or erroneous. Svec is not entitled to qualified immunity on Plaintiff's Fourth Amendment false arrest claim at this time. *See Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010) (qualified immunity is a question for the jury when "the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury") (quoting *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007)).

## 2. Excessive Force

Plaintiff alleges Defendants used excessive force during his arrest. Specifically, Plaintiff argues that Svec used excessive force when he "grabbed [Plaintiff] by the back of the hand and slammed [Plaintiff] face forward into the police car" and a John Doe officer, now identified as Officer Gibbings, "started putting his firsts, felt like his fists . . . into the middle of [Plaintiff's] back" during his arrest. Ford Dep., ECF No. 39-2, PageID.1122.

The Supreme Court has held that excessive force claims are best analyzed under the Fourth Amendment's protection against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. *Graham*, 490 U.S. at 396–97. "Courts should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest

by flight.'" *Kostrzewa*, 247 F.3d at 639 (quoting *Graham*, 490 U.S. at 396).

Here, Plaintiff was being arrested in connection with a shooting that occurred at his property. A shooting is no doubt a serious crime. In this case, however, the events leading up to the shooting significantly mitigated any actual or perceived threat Plaintiff may have posed to the officers. Specifically, Plaintiff was at the scene before the officers arrived and volunteered that he was the landlord, that he was carrying a firearm, and that he had a CPL. Plaintiff was 66 years of age, stood 5' 5" tall, and had his wife with him waiting in his vehicle. He was polite and cooperative. Plaintiff voluntarily complied with a search of his vehicle and facilitated the officers' taking possession of his handguns. Plaintiff walked voluntarily to the police car. Upon being told to get into the police car, Plaintiff asked why he was being told to sit in the police car. Svec testified that Plaintiff did not immediately comply with the command to get into the car, but also did not physically resist or attempt to flee. Plaintiff testifies that he was then "slammed . . . face forward into the police car" by Svec, and Gibbings "started putting his firsts, felt like his fists . . . into the middle of [Plaintiff's] back" during his arrest. Ford Dep.,

ECF No. 39-2, PageID.1122. Plaintiff was in pain, began crying, and immediately requested medical attention.

The Sixth Circuit has found that comparable shows of physical force have created issues of fact sufficient to preclude summary judgment in excessive force cases. *See, e.g.*, *Vance v. Wade*, 546 F.3d 774 (6th Cir. 2008) (arrest where plaintiff was "crammed" into a police car while officer "twisted" plaintiff's trunk may state claim for excessive force); *Sanilac Cty.*, 606 F.3d at 253–54 ("[W]e believe that a jury could reasonably find that slamming an arrestee into a vehicle constitutes excessive force when the offense is non-violent, the arrestee posed no immediate safety threat, and the arrestee had not attempted to escape and was not actively resisting."); *Folks v. Petitt*, 676 F. App'x 567, 572 (6th Cir. 2017) ("As far back as 1999, this court has held that slamming a compliant, non-resisting suspect into a stationary object during an arrest constitutes excessive force."); *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997) (excessively tight handcuffs may state claim for excessive force); *Kostrzewa*, 247 F.3d at 640 (reckless driving with handcuffed plaintiff in back seat may state claim for excessive force). The Court finds that a genuine issue of material fact exists as to whether the force applied by

Officers Svec and Gibbings was reasonable in this instance. Further, because the parameters of excessive force in this context were clearly established in 2016 and there exists a genuine issue of fact as to whether both Defendants' use of force was reasonable, qualified immunity would also be inappropriate. *See Kostrzewa*, 247 F.3d at 642 ("To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful.").

### ii. Assault and Battery Claims

Defendants argue that that they are immune from liability for Plaintiff's assault and battery claims under Michigan's governmental tort immunity statue, Mich. Comp. Laws § 691.1407. Plaintiff contends that Defendants are not entitled to governmental tort immunity because they lacked probable cause to arrest Plaintiff. ECF No. 39, PageID.1103.

The Michigan Supreme Court has held that a government employee is immune from suit for intentional torts under § 691.1407 when "(1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he

was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature." *Odom v. Wayne Cty.*, 760 N.W.2d 217, 218 (Mich. 2008). With respect to the second element, the Michigan Supreme Court has defined a lack of good faith as including "conduct or a failure to act that was intended to harm the plaintiff . . . [or] that shows such indifference to whether harm will result as to be equal to a willingness that harm will result." *Id.* at 225.

In this case, Plaintiff has established a genuine issue of material fact as to whether Defendants had probable cause to arrest him and whether excessive force was used during the course of his arrest. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants' use of excessive force during the course of Plaintiff's arrest shows an intent to harm Plaintiff or "such indifference to whether harm w[ould] result as to be equal to a willingness that harm w[ould] result." *Id.* *See also Smith v. Stoneburner*, 716 F.3d 926, 934 (6th Cir. 2013) ("If, as the Smiths allege, the officers banged Charles' head against a wall, refused to loosen his cuffs when asked and gratuitously shoved Donnetta, a reasonable jury could find that they

acted maliciously."); *Acklin v. City of Inkster*, 93 F. Supp. 3d 778, 800 (E.D. Mich. 2015) (reasonable jury could infer officers acted in bad faith when they used excessive force on plaintiff). Defendants are not entitled to governmental tort immunity at this time.

## IV. Plaintiff's Motion for Leave to Amend the Complaint

Plaintiff seeks leave to file an amended complaint that omits a number of claims from the original complaint, adds Officers Hernandez and Gibbings[3] as defendants, and contains additional facts in support of the alleged *Monell* claim. ECF No. 34. Defendants contend that leave to amend should be denied because Plaintiff's *Monell* claims are futile and Officers Hernandez and Gibbings would suffer prejudice if they were added to the complaint at this stage in the proceedings. ECF No. 38.

### a. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "should [be] freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant,

---

[3] Defendants' Opposition argues that Officers Hernandez and "Royer" would suffer prejudice if added as defendants at this stage in the proceedings, however, at oral argument, defense counsel stated that "Officer Royer" was a mistake and was intended to refer to Officer Gibbings. "Royer" is Officer Hernandez's first name.

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). With respect to futility of amendment, "[a] court is within its discretion to refuse amendment and dismiss the complaint if it 'concludes that the pleading as amended could not withstand a motion to dismiss.'" *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 746 (6th Cir. 1992) (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986)). Ultimately, the decision to grant or deny leave to amend a pleading is left to the sound discretion of the trial court. *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 591 (6th Cir. 1990).

### b. Discussion

#### i. *Monell* Claim

Plaintiff seeks to amend the complaint in part to allege certain new facts in support of Plaintiff's *Monell* claim. Specifically, in the proposed amended complaint, Plaintiff now alleges (i) that Defendants Gibbings and Svec were each once previously named as a defendant in a settled excessive force lawsuit; (ii) that Detroit police officers—but not

captains—receive approximately one hour of use-of-force training annually; and (iii) that the City of Detroit has a history of excessive force complaints. Proposed Am. Compl., ECF No. 34-2.

Defendants contend that Plaintiff fails to state a claim under *Monell* because Plaintiff cannot show that Svec lacked effective training on the use of force or that the alleged lack of training was the moving force that caused Plaintiff's injuries. ECF No. 38, PageID.1065–68.

The Supreme Court has approved municipal liability based on § 1983 when "the [municipal] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where such actions emanate from informal governmental custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In other words, the constitutional violation must have sprung from "official policy" in one form or another. *Id.* at 694. As such, local government units cannot be held liable mechanically for their employees' actions under a *respondeat superior* theory. *Id.* at 691. The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force'

behind the injury alleged." *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

When a § 1983 plaintiff alleges that a "failure to train" led to his injury, courts in the Sixth Circuit require the plaintiff to prove "three distinct facts": "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury.'" *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989)).

In this case, the record shows that Svec received yearly excessive force training from the police department until he was promoted to captain in April of 2016. Svec Dep., ECF No. 34-4, PageID.653. On the night of the arrest of Plaintiff, it had been less than a year since Svec's last use-of-force training. Plaintiff contends that the excessive force training Svec received was inadequate, but Plaintiff can point to no specific evidence of any shortcomings or problems with the City's excessive force training. Indeed, Plaintiff had the opportunity to request

the content of the City's use-of-force training program during discovery but admitted at oral argument that he did not do so.

Instead, Plaintiff asks the Court to infer that the City's training was inadequate from the fact that, despite receiving such training, the officers still allegedly used excessive force while arresting Plaintiff, and because Svec and Gibbings were each previously named as a defendant in an excessive force case. With respect to the latter, both *Medina et al. v. City of Detroit et al.*, 2:15-cv-12121-BAF-DRG, which named Gibbings as a defendant, and *Johnson v. City of Detroit et al.*, 2:05-cv-71787-AJT-MKM, which named Svec as a defendant, were settled and voluntarily dismissed. Neither case involved a judicial finding that either officer used excessive force. Thus, neither case is probative here. As to the former, the lack of any evidence that the training was inadequate forestalls any conclusion that inadequate training was "closely related to" or "actually caused" Plaintiff's injury. *See, e.g.*, *Harvey v. Campbell Cty.*, 453 F. App'x 557, 568 (6th Cir. 2011) (holding that because no evidence of inadequacy of training had been presented by plaintiff, "it is not reasonable to draw inferences—as the district court appears to have done—of inadequate training, deliberate indifference and causal effect

from the mere fact that, given the training [officer] had, [he still injured plaintiff]").

The Sixth Circuit requires Plaintiff to make three showings to substantiate a *Monell* claim under a failure to train theory: that the training program is inadequate, that the inadequacy is the result of the city's deliberate indifference, and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury. Here, Plaintiff has failed to meet his burden on all three. Consequently, Plaintiff's *Monell* claim is futile. Moreover, because Plaintiff has already had the benefit of discovery in this matter, the Court declines to provide further leave to amend Plaintiff's *Monell* claim.

### ii. Other Claims

Plaintiff contends that Officers Gibbings and Hernandez will not suffer prejudice if the Court allows them to be added at this stage in the proceedings. ECF No. 34, PageID.436. Both officers have been deposed, have been aware of the existence of this action, and will continue to be represented by City counsel like Defendant Svec. *Id.*

Defendants contend that adding Officers Hernandez and Gibbings as defendants would place "an unfair burden" on them because discovery has already closed in this matter. ECF No. 38, PageID.1069.

Rule 15 requires that leave to amend be freely given. Fed. R. Civ. P. 15(a)(2). While Defendants claim prejudice because discovery has closed, Officers Hernandez and Gibbings would presumably be represented by the same counsel who has represented Defendant Svec and the City for over two years, and they do not identify what additional discovery they would seek. If there is a need for additional discovery, Officers Hernandez and Gibbings may raise this issue with the Court. Based on this record, Defendants have not made a showing of prejudice sufficient to overcome the presumption under Rule 15(a) in favor of granting leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.").

Although gross negligence and Fourteenth Amendment claims are included in the proposed amended complaint, Plaintiff has indicated in his response that he is no longer pursing those claims. ECF No. 39,

PageID.1092–93. Accordingly, this Court denies Defendants' summary judgment motion with respect to Plaintiff's Fourth Amendment and assault and battery claims, denies Plaintiff leave to amend on his *Monell* claim, and grants Plaintiff leave to amend to add as defendants Officers Hernandez and Gibbings. Within fourteen (14) days of the entry of this Order, Plaintiff may file an amended complaint containing his remaining Fourth Amendment and assault and battery claims and adding defendants.

## V. Conclusion

**IT IS HEREBY ORDERED THAT** Defendants' Motion for Summary Judgment (ECF No. 35) is **DENIED**. Plaintiff's Fourth Amendment and assault and battery claims must be decided by a jury.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Leave to Amend (ECF No. 34) is **GRANTED IN PART AND DENIED IN PART**. The Court declines to permit Plaintiff to amend his *Monell* claim because doing so would be futile. Plaintiff shall file an amended complaint consistent with this Order within fourteen (14) days of the entry of this Order.

SO ORDERED.

DATED November 15, 2019.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge